IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

REBECCA HACKEMANN-BAHLMANN,

    Plaintiff,

    v.

KANSAS STATE UNIVERSITY, et al.,

    Defendants.

Case No. 5:24-CV-04098-JAR-GEB

**MEMORANDUM AND ORDER**

Plaintiff Rebecca Hackemann-Bahlmann filed this lawsuit against Defendants Kansas State University (the "University"); Christopher Culbertson, the University's Dean of the College of Arts and Sciences; and Shreepad Joglekar, the University's Department Head of the Department of Art,[1] alleging violations of the Kansas Act Against Discrimination ("KAAD"), the Rehabilitation Act of 1973 (the "Rehabilitation Act"), and the Family and Medical Leave Act of 1993 ("FMLA"). Plaintiff sues Dean Culbertson and Professor Joglekar in their individual and official capacities.

This matter is now before the Court on Defendants' Motion to Dismiss Plaintiff's Amended Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim (Doc. 18). The motion is fully briefed, and the Court is prepared to rule. For the reasons stated below, the Court grants in part and denies in part Defendants' motion.

**I.    Legal Standard**

Defendants move to dismiss Plaintiff's claims for lack of subject matter jurisdiction and failure to state a claim. Both grounds for dismissal are governed by Fed. R. Civ. P. 12(b).

---

[1] The Court refers to Dean Culbertson and Professor Joglekar collectively as "the Individual Defendants."

### A. Lack of Subject Matter Jurisdiction

Fed. R. Civ. P. 12(b)(1) provides for dismissal of a claim where the court lacks subject matter jurisdiction. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute."[2] Federal district courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States or where there is diversity citizenship.[3] "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."[4] The party asserting the existence of federal subject matter jurisdiction bears the burden of establishing that such jurisdiction exists.[5]

A motion to dismiss for lack of subject matter jurisdiction can take two forms: a facial attack or a factual attack.[6] "[A] facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint."[7] "In reviewing a facial attack, the district court must accept the allegations in the complaint as true."[8] "A factual attack goes beyond the allegations in the complaint and adduces evidence to contest jurisdiction."[9] "In the course of a factual attack under Rule 12(b)(1), a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion [for summary judgment]."[10]

---

[2] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

[3] 28 U.S.C. § 1331 (federal question); *id.* § 1332 (diversity of citizenship).

[4] *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

[5] *Id.*; *Ayala v. New Mexico*, No. 23-2013, 2023 WL 3374112, at *1 (10th Cir. May 11, 2023).

[6] *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995), *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425 (2001).

[7] *Id.*

[8] *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001).

[9] *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020).

[10] *Stuart*, 271 F.3d at 1225.

**B. Failure to State a Claim**

Fed. R. Civ. P. 12(b)(6) provides for dismissal for failure to state a claim upon which relief can be granted. To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative level"[11] and include "enough facts to state a claim to relief that is plausible on its face."[12] The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility."[13] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[14] The Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[15] The Court will view all well-pleaded factual allegations in the light most favorable to the plaintiff.[16]

"Generally, a court considers only the contents of the complaint when ruling on a 12(b)(6) motion."[17] However, an exception to the general rule limiting a court's review to the complaint applies when a document is referred to in the complaint, central to the plaintiff's claims, and no party disputes the document's authenticity.[18]

---

[11] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[12] *Id.* at 570.

[13] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[14] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[15] *Iqbal*, 556 U.S. at 678.

[16] *Jordan-Arapahoe, LLP v. Bd. of Cnty. Comm'rs of Cnty. of Arapahoe, Colo.*, 633 F.3d 1022, 1025 (10th Cir. 2011).

[17] *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013).

[18] *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

Here, Plaintiff's Amended Complaint references the Charges of Discrimination she filed with the Kansas Human Rights Commission ("KHRC") and the Equal Employment Opportunity Commission ("EEOC") on August 8, 2023.[19] These Charges are central to Plaintiff's claims because Plaintiff must establish that she exhausted all administrative remedies before filing this action with the Court. The parties do not dispute the authenticity of the Charges. Thus, the Court will consider the Charge Plaintiff filed with the KHRC, attached as Exhibit 6 to Plaintiff's memorandum in support of her response in opposition to Defendants' motion to dismiss,[20] in ruling on Defendants' motion.

## II.   Background

The following facts are derived from Plaintiff's Amended Complaint and the KHRC Charge.[21] Plaintiff was hired by the University as an Assistant Professor of Photography in June 2013. She was promoted to Associate Professor of Photography in 2017, then to Professor of Photography in 2023. The Professor of Photography position falls within the Department of Art which falls within the University's College of Arts and Sciences. At all times relevant to this lawsuit, the College of Arts and Sciences was led by Dean Culbertson and the Department of Art was led by Associate Professor Joglekar. According to Plaintiff, Dean Culbertson and Professor Joglekar's positions require them to "exercise administrative leadership, strategic planning, scheduling, budgeting, recruitment, and program development, among others, on behalf of the University and to the benefit of the students, professors, and staff" of the College of Arts and

---

[19] Doc. 13 ¶ 12.

[20] Doc. 24 at 28–30 (Ex. 6). Although Plaintiff's Amended Complaint references two Charges, one filed with the KHRC and the other filed with the EEOC, she only attached the KHRC Charge as an exhibit to her response. Therefore, the Court will only consider the contents of this Charge when ruling on Defendants' motion.

[21] Doc. 13.

4

Sciences and the Department of Art respectively.[22]  Furthermore, in their positions, Dean Culbertson and Professor Joglekar had "influence over Plaintiff's promotions, grant approval, research budgets, [and] special recognitions/awards" and maintained records related to Plaintiff's employment with the University.[23]

Plaintiff suffers from carpometacarpal capsulitis, entrapment neuropathies, and other issues affecting her upper extremities, including her wrists, hands, and fingers.  According to Plaintiff, these conditions substantially interfere with her daily activities.

On or about July 31, 2023, Plaintiff submitted an FMLA request to Defendants for a reduced workload related to her health conditions; she intended to undergo surgery, the recovery from which would require a reduced work schedule and limited exposure to certain wrist, hand, and finger movements.  Dean Culbertson and Professor Joglekar denied Plaintiff's request and instead scheduled Plaintiff to teach three studio-style courses for the fall 2023 semester.  These classes would require extensive and frequent use of Plaintiff's hands, wrists, and fingers.  According to Plaintiff, Defendants refused to adequately communicate with her regarding her request.  Further, Plaintiff alleges that she had to cancel her surgery and was forced to continue the heavy use of her wrists, hands, and fingers while instructing students which made her conditions worse.

Then, on or about August 4, 2023, Professor Joglekar removed Plaintiff from her position as the "Photography Area Coordinator."  According to Plaintiff, Professor Joglekar did not provide an explanation for this removal.

---

[22] Doc. 13 ¶¶ 22–23.

[23] *Id.* ¶¶ 24–25.

Four days later, on August 8, 2023, Plaintiff filed Charges against Defendants with the KHRC and EEOC. In the KHRC Charge, Plaintiff checked the box indicating retaliation and discrimination on the basis of disability, in violation of the KAAD and the Americans with Disabilities Act of 1990.

On or about July 1, 2024, in another effort to undergo surgery, Plaintiff submitted another request for accommodation in the form of a reduced teaching schedule for the fall 2024 semester under the FMLA, KAAD, and Rehabilitation Act to Defendants' general counsel, as well as directly to all Defendants. Defendants responded on August 12, 2024, less than one week before the start of the fall 2024 semester, by "essentially den[ying] every request made by Plaintiff and attempt[ing] to make the appearance that Defendants were granting Plaintiff accommodations by granting 'accommodations' that were either not requested by Plaintiff or otherwise meaningless."[24]

Plaintiff asserts that shortly following her July 31, 2023 request, and continuing through October 8, 2024, Defendants began treating her differently by interfering with her professor duties, being more critical of her work, and refusing to adequately communicate with her. Plaintiff claims that she made several attempts to engage in the interactive process and discuss potential possibilities related to her workload so that she could undergo surgery, but Defendants refused to meaningfully engage with her through October 8, 2024. According to Plaintiff, Defendants continually ignored her requests or incorrectly claimed that certain tasks were essential to her job description, "essentially forcing Plaintiff to work or otherwise risk her employment."[25]

---

[24] *Id.* ¶ 32.

[25] *Id.* ¶ 34.

6

Ultimately, according to Plaintiff, she was not permitted to take the FMLA leave she was entitled to and was forced to continually report to work, exacerbating her medical conditions and related pain. Plaintiff claims that Dean Culbertson and Professor Joglekar acted individually and in concert with the University.

Plaintiff filed her Complaint in this Court on October 8, 2024, then an Amended Complaint on January 30, 2025.

## III. Discussion

Counts I and II of Plaintiff's Amended Complaint allege that the University discriminated against and retaliated against Plaintiff in violation of the KAAD and Rehabilitation Act. Counts III and IV allege that the Individual Defendants, in their individual and official capacities, interfered with Plaintiff's rights and retaliated against Plaintiff's exercise of rights in violation of the FMLA. Defendants argue that Counts I and II should be partially dismissed and Counts III and IV should be dismissed in their entirety.

### A. Claims against the University

Defendants argue that Plaintiff's KAAD claims in Counts I and II should be partially dismissed against the University for failure to exhaust administrative remedies. Specifically, Defendants contend that Plaintiff's allegations regarding discriminatory pay, failure to train, and some of Plaintiff's allegations regarding failure to accommodate are unexhausted and must be dismissed. Plaintiff responds that all of her "claims under the KAAD were timely and properly exhausted before the [KHRC] in that the events occurred within the 180-day look back period or were reasonably expected to be included in the administrative investigation based on Plaintiff's KHRC Complaint."[26]

---

[26] Doc. 24 at 9.

"Courts analyze KAAD discrimination claims using the same analysis governing federal Title VII."[27] And like Title VII claims, a plaintiff must exhaust his or her administrative remedies before bringing suit pursuant to the KAAD.[28] The purposes of the exhaustion requirement are (1) to provide the charged party with notice of the alleged violation and (2) to give the administrative agency an opportunity to conciliate the claim.[29] Courts must liberally construe a plaintiff's allegations in EEOC and KHRC charges, but "the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim."[30] "The ultimate question is whether 'the conduct alleged [in the lawsuit] would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made [in the EEOC charge].'"[31] "A plaintiff's failure to exhaust administrative remedies is not a jurisdictional bar" and instead constitutes "an affirmative defense . . . subject to waiver, estoppel, and equitable tolling.'"[32]

The Court addresses each allegation identified by Defendants below.

### 1. Discriminatory Pay

Defendants argue that Plaintiff should not be permitted to allege a discriminatory pay claim under the KAAD because Plaintiff's KHRC Charge was devoid of any allegations of discriminatory pay. Plaintiff concedes that she does not seek any equal pay or pay

---

[27] *Mitchem v. Sleepcair, Inc.*, No. 20-2627, 2021 WL 4439406, at *5 (D. Kan. Sept. 28, 2021).

[28] 42 U.S.C. § 12117(a); K.S.A. § 44-1005(i).

[29] *Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018).

[30] *Id.* (emphasis omitted) (quoting *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007)).

[31] *Id.* (quoting *Martin v. Nannie & Newborns, Inc.*, 3 F.3d 1410, 1416 n.7 (10th Cir. 1993)).

[32] *Brown v. Keystone Learning Servs.*, 804 F. App'x 873, 882 (10th Cir. 2020).

8

discrimination claims under the KAAD, and instead only refers to her discriminatory pay in the Amended Complaint "to speak to [her] economic damages."[33]

Defendants also contend that Plaintiff should not be allowed to support any of her KAAD claims with unexhausted allegations of discriminatory pay. However, a Fed. R. Civ. P. 12(b)(6) motion to dismiss is not the proper forum to make such an argument. When deciding a motion to dismiss, a court determines whether a plaintiff's claims are supported by sufficient factual allegations;[34] if the claims are, they survive the motion to dismiss. Defendants cannot use their motion to dismiss to strike from the Amended Complaint factual allegations they assert cannot support a facially plausible claim. Furthermore, the Supreme Court has distinguished prior acts used as the basis for claims from "prior acts as background evidence *in support of* a timely claim."[35] Thus, the Court will not disregard these factual allegations at this stage.

### 2. Failure to Accommodate

Defendants argue that any of Plaintiff's allegations regarding requests for accommodations that do not relate to her request for accommodation for the fall 2023 semester are not actionable under the KAAD. Defendants contend that because "each alleged failure to accommodate is a discrete act and Plaintiff's Charge (submitted on August 8, 2023) raised such allegations only with respect to her request for accommodation in the Fall 2023 semester, all subsequent failure-to-accommodate allegations should be disregarded for failure to exhaust."[36] Plaintiff does not respond to this argument.

---

[33] Doc. 24 at 9–10.

[34] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[35] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (emphasis added).

[36] Doc. 19 at 14.

A plaintiff cannot maintain a judicial action against his or her employer under the KAAD if he or she did not administratively exhaust the claim.[37] Each discrete incident of discriminatory or retaliatory action by an employer "constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted."[38] That is, each discrete incident "constitutes a separate actionable 'unlawful employment practice.'"[39] Failure to accommodate constitutes a discrete employment action for which each incident must be administratively exhausted.[40]

Here, Plaintiff submitted her KHRC Charge on August 8, 2023. The Court agrees that, even construing the Charge liberally, Plaintiff's only allegations regarding Defendants' failure to accommodate are related to the fall 2023 semester. Thus, to the extent Plaintiff brings any claims for failure to accommodate not related to the fall 2023 semester, those claims are dismissed.[41] However, to the extent Defendants ask the Court to disregard Plaintiff's factual allegations regarding unexhausted instances of Defendants' failure to accommodate Plaintiff's requests, that request is denied. A motion to dismiss is not the proper vehicle to make such a request.

### 3. Denial of Training

Defendants argue that any of Plaintiff's allegations regarding Defendants' denial of training opportunities should be disregarded. Defendants contend that "[d]enial of training is a

---

[37] *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1409 (10th Cir. 1997).

[38] *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003).

[39] *Id.*

[40] *See Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1210 (10th Cir. 2007); *Becerra v. EarthLink, Inc.*, 421 F. Supp. 2d 1335, 1343 (D. Kan. 2006).

[41] *See Martinez*, 347 F.3d at 1210.

10

discrete act" and "Plaintiff's Charge makes no mention of any denial of training opportunities."[42] Plaintiff does not respond to this argument.

Plaintiff's Amended Complaint only makes one allegation regarding Defendants' failure to train her: "The University discriminated against Plaintiff as an individual with a disability in regard to her job training, and other terms, conditions, and privileges of her employment."[43] To the extent this one-sentence allegation purports to bring a separate KAAD claim for discrimination based solely on Defendants' alleged failure to train Plaintiff, it is unexhausted and therefore dismissed. But again, the Court declines to strike this factual allegation from Plaintiff's Amended Complaint at this stage.

### B. Individual Capacity Claims

Defendants argue that Counts III and IV should be dismissed against the Individual Defendants in their individual capacities for failure to state a claim because public employees are not subject to individual liability under the FMLA.[44] Plaintiff responds that public employees can be subject to FMLA liability in their individual capacities under *Walkingstick Dixon v. Oklahoma ex rel. Regional University System of Oklahoma Bd. of Regents*.[45] The Court agrees with Plaintiff.

Under the FMLA, employers are prohibited from interfering with, restraining, or denying the exercise of rights provided by the Act.[46] 29 U.S.C. §§ 2611(4)(A) and (B) provide:

---

[42] *Id.* at 15.

[43] Doc. 13 ¶ 52.

[44] The Court uses the terms "public employees" and "public officials" interchangeably.

[45] 125 F.4th 1321 (10th Cir. 2025).

[46] 29 U.S.C. § 2615(a)(1).

11

> **(A)** In general
>
> The term employer—
>
> > **(i)** means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;
> >
> > **(ii)** includes—
> > > **(I)** any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and
> > > **(II)** any successor in interest of an employer;
> >
> > **(iii)** includes any "public agency", as defined in section 203(x) of this title; and
> >
> > **(iv)** includes the Government Accountability Office and the Library of Congress.
>
> **(B)** Public agency
>
> For purposes of subparagraph (A)(iii), a public agency shall be considered to be a person engaged in commerce or in an industry or activity affecting commerce.

In *Kammerer v. University of Kansas*,[47] this Court addressed an issue identical to the one presented here: whether public employees sued in their individual capacities are "employers" under the FMLA, and thus subject to liability under it. The Court concluded that public officials were not and denied FMLA liability against the public officials in their individual capacities. When the Court issued its decision in *Kammerer*, it acknowledged that circuits were split on the issue and that the Tenth Circuit had not addressed the issue at all.[48] The Court also pointed out the intra-circuit split among districts within the Tenth Circuit.[49] With no binding authority on the issue, this Court looked to its own prior decision in *Arbogast v. Kansas*,[50] the most recent time it had addressed the issue prior to *Kammerer*. In both *Kammerer* and *Arbogast*, the Court found

---

[47] No. 24-2182, 2024 WL 4692052 (D. Kan. Nov. 6, 2024).

[48] *Id.* at 3.

[49] *Id.* at 6.

[50] No. 13-4007, 2014 WL 1304939 (D. Kan. Mar. 31, 2014).

persuasive the Sixth Circuit's textual statutory interpretation and analysis in *Mitchell v. Chapman*,[51] which led it to conclude that "a public employee acting in her individual capacity is not an 'employer' under the FMLA."[52]  However, in *Kammerer*, the Court made clear that it only relied on *Arbogast* because the Tenth Circuit had not issued any new authority on the issue and "the state of play on this issue [was] generally the same as when the Court previously considered the issue [in *Arbogast*]."[53]  But as Plaintiff points out, that is no longer the case after the Tenth Circuit's *Walkingstick Dixon* decision, filed after *Kammerer*.[54]

In *Walkingstick Dixon*, the plaintiff sued her supervisor at Northeastern State University for retaliation under the FMLA.  A magistrate judge for the Eastern District of Oklahoma granted summary judgment for the supervisor.  First, the magistrate judge determined that individuals may be held liable under the FMLA as employers based on the statute's plain language and the consensus of Tenth Circuit district courts.[55]  Then, the magistrate judge applied the "economic reality test" to conclude that the supervisor did not qualify as the plaintiff's employer.[56]  The Tenth Circuit affirmed, "hold[ing] that (1) the FMLA permits individual liability and (2) the economic reality test determines whether an individual qualifies as an FMLA employer."[57]  The Tenth Circuit reasoned that "[b]ecause FMLA's 'employer' definition 'largely tracks' the FLSA's definition," it should apply the economic reality test to the FMLA as other circuits do.[58]

---

[51] *Mitchell v. Chapman*, 343 F.3d 811, 825–33 (6th Cir. 2003).

[52] *Kammerer*, 2024 WL 4692052, at *6.

[53] *Id.* at *6.

[54] 125 F.4th 1321 (10th Cir. 2025).

[55] *Id.* at 1332.

[56] *Id.*

[57] *Id.* at 1342.

[58] *Id.*

13

Defendants argue that *Walkingstick Dixon* "is not dispositive because it did not analyze individual FMLA liability in the context of public officials."[59] The Court does not find this argument persuasive. Although *Walkingstick Dixon* does not explicitly state that public officials can be held liable under the FMLA, the defendant supervisor in that case was a public official, a fact the Tenth Circuit was surely aware of. This case is factually analogous: a former employee of a public university is suing her former supervisors under the FMLA.[60] Because the Tenth Circuit applied the economic reality test to determine whether the supervisor was an employer under the FMLA, the Court will do the same here.

To determine whether an individual is an employer under the economic reality test, courts consider "a nonexclusive and overlapping set of factors," including "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."[61]

> No one of the four factors standing alone is dispositive ... [and] any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition. In the FMLA context, courts assessing the economic reality of an employment relationship have construed this test as asking essentially whether the putative employer controlled in whole or in part plaintiff's rights under the FMLA.[62]

Here, two of the factors weigh in favor of finding that the Individual Defendants are employers. The second factor weighs in favor because Plaintiff alleges that the Individual

---

[59] Doc. 25 at 4.

[60] Plaintiff's Amended Complaint does not allege that her employment at the University was terminated, but she seeks reinstatement as a form of relief. Thus, the Court assumes Plaintiff is no longer employed by the University.

[61] *Graziadio*, 817 F.3d at 422 (first quoting *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 75 (2d Cir. 2003), and then quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)).

[62] *Id.* at 422–23 (citation modified).

Defendants exercised "administrative leadership, strategic planning, scheduling, budgeting, recruitment, and program development . . . on behalf of the University and to the benefit of the . . . professors."[63] The fourth factor weighs in favor because Plaintiff alleges that the Individual Defendants "maintained records related to Plaintiff's employment with the University."[64] There are insufficient facts alleged to assess the remaining two factors—Plaintiff did not allege any facts related to whether the Individual Defendants had any authority over hiring, firing, or pay. However, viewing Plaintiff's factual allegations in the light most favorable to Plaintiff, the Court finds that the individual Defendants controlled a sufficient part of Plaintiff's rights under the FMLA. Thus, the Court concludes that Plaintiff has alleged sufficient facts to establish that the Individual Defendants are employers under the economic reality test and can therefore be held liable under the FMLA in their individual capacities.

### C. Official Capacity Claims

Defendants argue that Counts III and IV should be dismissed against the Individual Defendants in their official capacities for lack of subject matter jurisdiction because the claims are barred by Eleventh Amendment sovereign immunity. Plaintiff responds that the *Ex parte Young*[65] exception to sovereign immunity applies. The Court agrees with Defendants.

When a defendant raises Eleventh Amendment immunity in a motion to dismiss, it implicates this Court's subject matter jurisdiction and, thus, arises under Rule 12(b)(1).[66] The Eleventh Amendment provides that, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the

---

[63] Doc. 13 ¶ 22–23.

[64] *Id.* ¶ 25.

[65] 209 U.S. 123 (1908).

[66] *United States ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 942–44 (10th Cir. 2008).

United States by Citizens of another state, or by Citizens or Subjects of any Foreign State."[67] The Eleventh Amendment grants immunity that "accord[s] states the respect owed them as joint sovereigns," "applies to any action brought against a state in federal court, including suits initiated by a state's own citizens," and "applies regardless of whether a plaintiff seeks declaratory or injunctive relief, or money damages."[68]  "Generally, the law considers state officials acting in their official capacities to be acting on behalf of the state and immune from unconsented lawsuits under the Eleventh Amendment."[69]  "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court."[70]

An exception to Eleventh Amendment immunity, known as the *Ex parte Young* exception, allows plaintiffs to seek prospective relief where ongoing violations exist.[71]  "This immunity extends to arms of the state and to state officials who are sued for damages in their official capacity."[72]

Here, Plaintiff sues the Individual Defendants in their official capacities without the Individuals Defendants' consent.  Therefore, the Individual Defendants are entitled to the state's sovereign immunity unless the *Ex parte Young* exception applies.[73]  Defendants purport to bring a facial challenge to subject matter jurisdiction,[74] but make arguments that go beyond the

---

[67] U.S. Const. amend. XI.

[68] *Steadfast Ins. v. Agric. Ins.*, 507 F.3d 1250, 1252 (10th Cir. 2007).

[69] *Elephant Butte Irrigation Dist. of N.M. v. Dep't of Interior*, 160 F.3d 602, 607 (10th Cir. 1998).

[70] *Levy v. Kan. Dep't of Soc. & Rehab. Servs.*, 789 F.3d 1164, 1168 (10th Cir. 2015).

[71] *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012).

[72] *Williams v. Utah Dept's of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019).

[73] Although other exceptions to Eleventh Amendment sovereign immunity exist, the *Ex parte Young* exception is the only one at issue here.

[74] Doc. 19 at 4 ("This Motion is therefore a facial challenge to subject matter jurisdiction.").

allegations in the Amended Complaint. Thus, the Court will analyze Defendants' arguments related to subject matter jurisdiction as both a facial and factual challenge.

Defendants' first argument against application of the *Ex parte Young* exception is that Plaintiff seeks compensatory damages, front pay, back pay, benefits, and other damages under the FMLA that do not fall within the *Ex parte Young* exception for prospective injunctive relief. This argument is easily resolved because Plaintiff concedes that she only seeks prospective injunctive relief in the form of reinstatement against the Individual Defendants in their official capacities.

Next, Defendants argue that Plaintiff's request for prospective injunctive relief fails *Ex parte Young*'s requirements because the Individual Defendants lack the authority to reinstate her. "In *Ex Parte Young*, the Supreme Court noted that the state official must have the power to perform the act required in order to overcome the jurisdictional bar of the Eleventh Amendment."[75]

First, Defendants bring a facial challenge that Plaintiff's Amended Complaint does not sufficiently allege that the Individual Defendants have the authority to reinstate Plaintiff. The Court agrees. As the Court stated above, Plaintiff's Amended Complaint does not allege any facts related to the Individual Defendants' authority to hire or fire, nor does it allege any facts related to their authority to reinstate employees.

Defendants also bring a factual challenge that the Individual Defendants lack reinstatement authority. Specifically, Defendants cite K.S.A. §§ 76-711–715 and *Klein v. University of Kansas Medical Center*[76] to argue that only the University's President and

---

[75] *Klein v. Univ. of Kansas Med. Ctr.*, 975 F. Supp. 1408, 1417 (D. Kan. 1997).
[76] *Id.*

individuals delegated by the President have authority to reinstate employees, and the Individual Defendants do not fall in either category. K.S.A. §§ 76-711–715, in relevant part, state that the chief executive officer of a state educational institution shall be appointed by the board of regents, have the title of president, and appoint such employees as are authorized by the board of regents. In *Klein*, the court used these sections to conclude that the institution's chief executive officer was the only person with the authority to reinstate the plaintiff to his former position.[77]

In response, Plaintiff cites to the Kansas Board of Regents Policy Manual, the Kansas State University Policies and Procedures Manual, letters regarding signature authority, and the Kansas State University Handbook, claiming that they support the Individual Defendants' reinstatement authority.

The Kansas Board of Regents Policy Manual, Chapter II, Section C(2)(b)(i)(1) states that the University's president is authorized to make all employee appointments and may delegate that authority.[78] Defendants agree with that proposition. The Kansas State University Policies and Procedures Manual, Chapter 3070, Section .020 concerns authority to execute acquisition contracts, not authority to reinstate employees.[79] The letter regarding signatory authority cited by Plaintiff gives general and limited contracting authority to individuals that are not the Individual Defendants; gives certain individuals, including the Individual Defendants, signatory authority for reappointments in their respective areas; and gives individuals that are not the Individual Defendants signatory authority for unclassified employee appointments.[80] The Individual Defendants' authority to reappoint certain employees does not give them authority to

---

[77] *Id.*

[78] *See* Doc. 24 at 14 (Ex. 1).

[79] *See id.* at 16–17 (Ex. 2).

[80] *Id.* at 19–21 (Ex. 3).

reinstate employees. The Kansas State University Handbook Section B.21 simply states that the dean of each college is that college's chief administrative officer and "is responsible for operation and development, for planning and budgeting, and for personnel management and activities in each college."[81] This section does not delegate the Individual Defendants with the authority to reinstate employees. Lastly, Section C.20 of the Kansas State University Handbook relates to recommendations for faculty appointments, not reinstatement of employees.[82]

None of the authorities cited by Plaintiff, standing alone or in conjunction with one another, delegate to the Individual Defendants reinstatement authority. Thus, the *Ex parte Young* exception is inapplicable, and the Eleventh Amendment bars the FMLA claims against the Individual Defendants in their official capacities. And because the Court finds that the Individual Defendants lack authority to reinstate Plaintiff based on evidence that goes beyond the Amended Complaint, it will not grant Plaintiff leave to amend her pleadings to state that the Individual Defendants possess such authority.[83]

## IV.   Conclusion

Defendants' motion to dismiss is granted in part and denied in part. Defendants' motion to dismiss Counts I and II against the University for failure to state a claim is granted to the extent Plaintiff alleges KAAD claims for discriminatory pay, failure to accommodate not related to the fall 2023 semester, and denial of training. Defendants' motion to dismiss Counts I and II is otherwise denied. Defendants' motion to dismiss Counts III and IV against the Individual

---

[81] *Id.* at 23 (Ex. 4).

[82] *Id.* at 25–26 (Ex. 5).

[83] Further, Plaintiff's request for leave to amend her pleadings, made in her response, failed to comply with D. Kan. Rule 15.1, which requires that motions for leave to amend "attach the proposed pleading or other document; and . . . attach a redlined version of the proposed amendment that shows all proposed changes to the pleading." Plaintiff's failure to comply with D. Kan. Rule 15.1 is alone sufficient to deny leave to amend.

Defendants in their individual capacities for failure to state a claim is denied. Finally, Defendants' motion to dismiss Counts III and IV against the Individual Defendants in their official capacities for lack of subject matter jurisdiction is granted.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss Plaintiff's Amended Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim (Doc. 18) is **granted in part and denied in part**. Defendants' motion to dismiss Counts I and II for failure to state a claim is **granted to the extent Plaintiff alleges KAAD claims for discriminatory pay, failure to accommodate not related to the fall 2023 semester, and denial of training**. Defendants' motion to dismiss Counts I and II is **otherwise denied**. Defendants' motion to dismiss Counts III and IV against the Individual Defendants in their individual capacities for failure to state a claim is **denied**. Defendants' motion to dismiss Counts III and IV against the Individual Defendants in their official capacities for lack of subject matter jurisdiction is **granted**.

**IT IS SO ORDERED.**

Dated: June 27, 2025

S/ Julie A. Robinson<br>
JULIE A. ROBINSON<br>
UNITED STATES DISTRICT JUDGE